UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STRATA TRUST COMPANY, CUSTODIAN FBO PETER FIORETTI ROTH IRA 300002568 (AS ASSIGNEE OF LIBERTY TRUST COMPANY, LTD, AS CUSTODIAN FOR THE BENEFIT OF PETER JOHN FIORETTI IRA ACCOUNT TC003645), and PETER FIORETTI, <br><br> Plaintiffs, <br><br> v. <br><br> LINDA E. GRECO, SDS BNDO STREET FUNDING LLC, <br><br> Defendants. | Case No: 1:23-cv-07910-LJL <br><br> **FIRST AMENDED COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, STRATA Trust Company, Custodian FBO Peter Fioretti Roth IRA 300002568 (as assignee of Liberty Trust Company, Ltd, as custodian for the benefit of Peter John Fioretti IRA Account TC003645) and Peter Fioretti ("Fioretti")(individual a "Plaintiff" and collectively "Plaintiffs"), by and through their undersigned attorneys, by way of this Complaint against Linda E. Greco ("Guarantor"), SDS BNDO Street Funding LLC ("Borrower") (individually a "Defendant" and collectively "Defendants") allege on personal knowledge as to its own actions and on information and belief as to all other allegations, as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring this action for compensatory damages, interests, costs, and attorneys' fees against Defendant Guarantor under that certain personal guaranty agreement signed by Guarantor as security for financing provided by the Plaintiffs.

2. Plaintiffs bring this action for compensatory damages, interests, costs, and attorneys' fees against Defendant Borrower under those certain Loan Documents signed by Borrower evidencing and securing a Loan by the Plaintiffs.

## PARTIES

3. Plaintiff STRATA Trust Company, Custodian FBO Peter Fioretti Roth IRA 300002568 (as assignee of Liberty Trust Company, Ltd, as custodian for the benefit of Peter John Fioretti IRA Account TC003645) is a trust company organized and existing as custodian for the benefit of Peter Fioretti Roth IRA 300002568, having an office at c/o Mountain Real Estate Capital LLC, 6836 Carnegie Blvd, Suite 410, Charlotte, North Carolina 28211.

4. Plaintiff Peter Fioretti is an individual resident of Florida.

5. Defendant Guarantor is an adult individual who is domiciled at 132 Remsen Street, Brooklyn, New York, 11201. Accordingly, Defendant is a citizen of the State of New York.

6. Defendant Borrower is New York limited liability company with its principal place of business in New York, New York and with an address of 132 Remsen Street, Brooklyn, New York, 11201.

## JURISDICTION AND VENUE

7. There is complete diversity of citizenship in this action between Plaintiff and the Defendant who are citizens of different states.

8. The amount in controversy in this matter is in excess of $11,793,877.48, exclusive of attorneys' fees and costs.

9. Accordingly, this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) or (a)(2).

10. The Guarantor agreed to submit to the personal jurisdiction of this Court and that this Court is the proper venue of this action. As set forth in section 12 of the Guaranty (as defined below), the Guarantor agreed that the Guaranty "shall be deemed to be a contract entered into pursuant to the laws of the State of New York and shall in all respects be governed, construed,

applied and enforced in accordance with applicable federal law and the laws of the State of New York, without reference or giving effect to any choice of law doctrine."

11. Section 9.2(c) of the Loan Agreement specifically states:

> The Borrower hereby irrevocably waives any objection which it may now or hereafter have to the laying of venue of any of the aforesaid actions or proceedings arising out of or in connection with this Agreement or any other Loan Document brought in the courts referred to in subsection (b) hereof and hereby further irrevocably waives and agrees not to plead or claim in any such court that any such action or proceeding brought in any such court has been brought in an inconvenient forum.

12. Pursuant to 28 U.S.C. §1391(a)(1) and (2), venue is also proper in this Court because Defendant resides in New York, New York, and a substantial part of the transactions and occurrences giving rise to the Plaintiff's claims occurred in this judicial district.

## FACTUAL BACKGROUND

13. This action involves that certain loan ("Loan") from SDS BNDO Street Funding LLC ("Borrower") in favor of Liberty Trust Company, LTD as custodian for the benefit of Peter John Fioretti IRA Account TC003645 ("Liberty Trust"), subsequently assigned to STRATA Trust Company, Custodian for the benefit of Peter John Fioretti Roth IRA Account 300002568, and Peter Fioretti, (collectively "Lender").

14. The Loan is evidenced by that certain Promissory Note ("Note") dated April 11, 2017, in the original principal amount of $2,200,000.00 ("Loan Amount") in favor of the Lender. A true and correct copy of the Note is attached hereto as **Exhibit A**.

15. The Note provides in relevant part that:

> Upon the occurrence of an Event of Default, the unpaid balance of the principal amount of this Note, together with all accrued and unpaid interest thereon, may become, or may be declared to be, due and payable in the manner, upon the conditions and with the effect provided in the Loan Agreement.
>
> Borrower promises to pay all costs and expenses, including reasonable attorneys' fees, all as provided in the Loan Agreement, incurred in the collection and enforcement of this Note.

Borrower and any endorsers of this Note hereby consent to renewals and extensions of time at or after the maturity hereof, without notice, and hereby waive diligence, presentment, protest, demand notice of every kind and, to the full extent permitted by law, the right to plead any statute of limitations as a defense to any demand hereunder.

16. The Loan is secured by, among other things, that certain Loan Agreement ("Loan Agreement") by and between Borrower and Lender dated April 11, 2017. A true and correct copy of the Loan Agreement is attached hereto as **Exhibits B**.

17. Section 2.2 of the Loan Agreement mandates the following:

(a) the maturity Date shall be December 31, 2017, the interest rate shall be twenty (20%) percent per annum, accruing and payable as hereinafter provided.

(b) lender shall be repaid from the receiving 100% distribution of New Sale Proceeds received by the Borrower, prior to all other distributions.

(c) Lender must receive not less than the repayment of its Loan plus the Minimum Interest.

18. Section 2.3 of the Loan Agreement specifically states:

(a) At maturity. The entire outstanding principal amount of the Loan together with all accrued and unpaid interest on the Loan and all other amounts due under the Loan Documents with respect to the Loan shall be due and payable by Borrower to Lender on the Maturity Date.

(b) Prior to Maturity. Prior to the Maturity Date, all cash flow proceeds received by the Borrower or PG, directly or indirectly, from SDS William, LLC, SDS 46, LLC, or SDSP Schermerhorn, LLC shall be distributed as set forth in §2.2. Amounts repaid by the Borrower pursuant to this section may not be reborrowed.

19. Section 2.4 of the Loan Agreement provides that the Loan shall "bear interest at a rate of 20% per annum." Additionally, in the event of default,

[T]he Loan shall bear interest at the Default Rate, Payment or acceptance of the increased rates provided for in this Section 2.4(b) is not a permitted alternative to timely payment or full performance by the Borrower and shall not constitute a waiver of any default or Event of Default or a waiver in respect of this Agreement or any other Loan Document and shall not otherwise prejudice or limit any rights or remedies of the Lender.

20. Section 8.1 of the Loan Agreement provides:

Borrower agrees that its obligations under this Agreement and the other Loan Documents are absolute and unconditional, irrespective of the value, genuineness, validity, regularity or enforceability of any of the Loan Documents, or any other agreement or instrument referred to therein, or any substitution, release or exchange of any other guaranty of or security for the Loan Obligations, and, to the fullest extent permitted by applicable law, irrespective of any other circumstance whatsoever which might otherwise constitute a legal or equitable discharge or defense, it being the intent of Section 8.1 that the obligations of Borrower hereunder shall be absolute and unconditional under all circumstances.

21. The Defendant Borrower has defaulted under the Loan Documents, and specifically section 7.1 of the Loan Agreement which outlines the Events of Default.

22. The Defendant Borrower has failed and/or refused to pay the Loan Obligations in breach of the Loan Agreement, including but not limited to sections 2.2, 2.3, 2.4, 7.1, 8.1 of the Loan Agreement.

23. The Loan is further secured by that certain Side Letter Agreement dated April 12, 2017 ("Side Letter") by and between Louis V. Greco, Jr. ("Greco") and Lender, further acknowledged by Borrower and its manager, BNDO Manager LLC ("BNDO Manager"). A true and correct copy of the Side Letter is attached hereto as **Exhibits C**.

24. Greco is the Controlling Person, as that term is defined in the Loan Documents, of the Defendant Borrower. Greco was the authorized signatory of the Defendant Borrower.

25. The Loan is further secured by the Loan Participation Agreement ("Loan Participation Agreement") dated October 11, 2017 by and between Lender and G46, LLC ("Participant"), as further amended by the First Amendment to Loan Participation Agreement ("First Amended Loan Participation Agreement") dated December [ ] 2017, and further amended by the Second Amendment to Loan Participation Agreement ("Second Amended Loan Participation Agreement") dated March 20, 2018. A true and correct copy of the Loan Participation Agreement, First Amended Loan Participation Agreement, and Second Amended Loan Participation Agreement are attached hereto as **Exhibits D, E, F**, respectively.

26. The Loan is further secured by that certain Guaranty ("Guaranty") dated April 12, 2017, given by Defendant Linda Greco ("Guarantor") for the benefit of Lender. A true and correct copy of the Guaranty is attached hereto as **Exhibit G**.

27. Section 1 of the Guaranty provides that the "obligations of Guarantor hereunder are and shall be absolute under any and all circumstances…" (See Ex. G, ¶1).

28. The Guaranty provides for the following guaranteed obligations ("Guaranteed Obligations"):

> (a) The amount of the Debt, including reasonable attorneys' fees incurred by the Payee to enforce the Note, that remains due but unpaid.
> (b) The amount of any and all liabilities, losses, damages, expenses, and charges arising out of or any way connected with litigation (threatened or actual) in connection with the (i) Loan, or (ii) that certain real property located at 22 Bond Street, New York New York, for which Payee or any affiliate of Payee may become liable or sustain.
> (c) The conditions set forth in that certain Side Letter dated as of the date hereof, between Payee, Maker, and BNDO Manager LLC.

(*See* Ex. G, ¶3).

29. Section 4 of the Guaranty provides that Guarantor shall be liable "for all reasonable out-of-pocket costs and expenses (including reasonable counsel fees)…in connection with the collection of the Guaranteed Obligations or any portion thereof or with the enforcement of this Guaranty." (*See* Ex. G, ¶4).

30. Section 5 of the Guaranty specifically states:

> This is a guaranty of payment and not of collection and, upon and during the continuance of any Event of Default of Maker under the Note or the other Loan Documents, Payee may, at its option, proceed directly and at once, without notice, against Guarantor to collect and recover the ***full amount of the Guaranteed Obligations*** or any portion thereof, without proceeding against Maker or any other person, or foreclosing upon, selling, or otherwise disposing of or collecting or applying against any of the mortgaged property or other collateral for the Loan.

(*See* Ex. G, ¶5)(emphasis added).

31. On or about October 11, 2017, the Borrower, Guarantor, BNDO Manager, and Lender entered into that certain Amended and Restated First Omnibus Loan Modification Agreement ("First Modification Agreement"), increasing the Loan Amount from $2,200,000.00 to $5,050,000.00. A true and correct copy of the First Modification Agreement is attached hereto as **Exhibit H**.

32. BNDO Manager and Lender previously entered into that certain loan in the amount of $1,400,000.00 as evidenced by that certain promissory note dated January 1, 2014 (the "$1.4M Loan"), and that certain loan in the amount of $1,000,000.00 as evidenced by that certain promissory note dated August 12, 2014 (the "1.0M Loan"). The $1.0M Loan and the $1.4M Loan are hereinafter collectively referred to as the BNDO Loans.

33. On or about October 11, 2017, Borrower further made a loan to 22 BNDO MEZZ LLC, a Delaware limited company ("Joint Venture") in the amount of $5,050,000.00 ("Partnership Loan"). The Joint Venture is the sole member of 22 BNDO, LLC, a Delaware limited liability company ("Owner") which is the fee owner in that certain six-unit condominium project located on 22 Bond Street (the "Project").

34. On or about December [ ], 2017, the Borrower, Guarantor, BNDO Manager, and Lender entered into that certain Second Omnibus Loan Modification Agreement ("Second Modification Agreement"), increasing the Loan Amount from $5,050,000.00 to $5,250,000.00. A true and correct copy of the Second Modification Agreement is attached hereto as **Exhibit I**.

35. On or about March 20, 2018, the Borrower, Guarantor, BNDO Manager, and Lender entered into that certain Third Omnibus Loan Modification Agreement ("Third Modification Agreement"), increasing the Loan Amount from $5,250,000.00 to $6,450,000.00. A true and correct copy of the Third Modification Agreement is attached hereto as **Exhibit J**.

36. The First Modification Agreement, Second Modification Agreement, and Third Modification Agreement each reaffirmed the Guaranty and included in relevant part the following:

> **Reaffirmation of Guaranty**. Guarantor, by her signature below as such, for a valuable consideration, the receipt and adequacy of which are hereby acknowledged, hereby consent to this Agreement and hereby declares to and agrees with Lender that the Guaranty is and shall continue in full force and effect for the benefit of Lender with respect to the Obligations, as amended by this Agreement, that there are no offsets, claims, counterclaims, cross-claims or defenses of the Guarantor with respect to the Guaranty nor, to Guarantor's knowledge, with respect to Obligations, for which Guarantor is liable pursuant to the Guaranty, that the Guaranty is not released, diminished or impaired in any way by this Agreement or the transactions contemplated hereby, and that the Guaranty is hereby ratified and confirmed in all respects. Guarantor hereby reaffirms all of the representations and warranties set forth in the Guaranty. Guarantor acknowledges that without this consent and reaffirmation, Lender would not execute this Agreement or otherwise consent to its terms.

(*See* Ex. H, ¶10; Ex. I, ¶7; Ex. J, ¶7).

37. The Note, Loan Agreement, Side Letter, Guaranty, Loan Participation Agreement, First Amended Loan Participation Agreement, Second Amended Loan Participation Agreement, First Modification Agreement, Second Modification Agreement, and Third Modification Agreement are collectively referred to as the Loan Documents.

38. As set forth in the Loan Agreement, all sums due and owed under the Loan were required to be repaid, in full, by December 31, 2017 (the "Maturity Date"), as further extended to June 30, 2018, pursuant to the Third Modification Agreement,

39. Borrower defaulted and has remained in default as a result of its failure to pay the outstanding principal and interest as required on the applicable Maturity Date ("Borrower's Default").

40. On or about July 6, 2023, a Notice of Default ("Notice of Default") was issued to the Borrower and the Guarantor. A true and correct copy of the Notice of Default is attached hereto as **Exhibit K**.

41. Demand was made on the Guarantor for prompt payment of the Guaranteed Obligations with regard to the Borrower's Default. Guarantor has refused to make prompt payment in accordance with the Guaranty and remains in default of the Guaranty.

42. Defendants pledged as collateral as per the Loan Documents that certain property located at 140 Remsen Street, Unit 3, Brooklyn, New York (Block 254, Lot 1103) that was pledged as collateral ("Pledged Collateral"). A true and correct copy of the UCC-1 documenting the Plaintiffs' security interest is attached hereto as **Exhibit L**.

43. On or about August 8, 2022, Defendants misrepresented by written email communications to Plaintiffs, that the sale of the Pledged Collateral would result in a paydown to Plaintiffs of approximately $135,00 to $200,000. A true and correct copy of the emails are attached hereto as **Exhibit M**.

44. On or about September 22, 2022, Defendants sold the Pledged Collateral and converted the proceeds. A true and correct copy of the Statement of Closing is attached hereto as **Exhibit N**.

45. On or about October 3, 2022, the following was misrepresented with respect to the sale of the Pledged Collateral:

> The transaction closed last week and the final net to the seller is $51,000 (Closing statement attached). It required a modification to the declaration (insisted by the other unit owners and it cost us about $15,000. The money is being held by sellers attorney until the recording of the deed which will happen when the amended declaration of and tax maps are filed. Plans were filed with the city surveyor and the attorney is holding an addition[al] $25K of the seller money to insure that its filed by the 31st of October otherwise it come[s] to us.

46. The net seller proceeds of at least $51,123.39 ("Net Seller Proceeds") should have been provided to the Plaintiffs as per the Loan Documents.

47. On or about October 17, 2022, it was misrepresented to the Plaintiffs that:

Comments by the City Survey on the plans were received Friday. Plan approval for the modification to the declaration is expected later this week early next week which will allow us to record the declaration and the final deed thus releasing the money from escrow.

48. The Plaintiffs never received the funds despite numerous follow up communications and despite several misrepresentations from the Defendants that the funds would be forthcoming.

49. Defendants misrepresented that they would be providing the Net Seller Proceeds to the Plaintiffs post-closing.

50. Defendants misrepresented to Plaintiffs that the Net Seller Proceeds were being held in escrow and would be released to Plaintiffs.

51. Defendants instead converted the funds post-closing and continued to make fraudulent misrepresentations to Plaintiffs to disguise the theft.

52. Defendants, with intent to deceive, made the multiple misrepresentations and disguised their conversion of the Net Seller Proceeds of the Pledged Collateral.

53. On or about November 14, 2022, the Plaintiffs followed up again with the Defendants for the Net Seller Proceeds.

54. On or about July 10, 2023, the Plaintiffs followed up once again with the Defendants for the Net Seller Proceeds.

55. Plaintiffs never received the Net Seller Proceeds as Defendants fraudulently converted the funds.

## COUNT I
### (Breach of Contract – Plaintiffs v. Defendant Guarantor)

56. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

57. On or about April 12, 2017, the Defendant executed the absolute and unconditional Guaranty, guaranteeing the payment obligations of the principal sum evidenced by the Loan Documents, including but not limited to minimum interest, default interest, and attorneys' fees and costs.

58. As a result of the Borrower's Default for failing to pay the outstanding principal and interest as required on the applicable Maturity Date and in accordance with the Loan Documents, the Guarantor assumed and became liable to the Lender for the Guaranteed Obligations (as defined above), in excess of $11,793,877.48, in accordance with the terms of the Guaranty and Loan Documents.

59. The Guarantor has failed and/or refused to pay the Guaranteed Obligations in breach of the Guaranty, including but not limited to sections 1, 4, 5 of the Guaranty.

60. Plaintiffs have suffered damages as a result of the Guarantor's breach of the Guaranty.

61. Defendant is liable in excess of $11,793,877.48, exclusive of attorneys' fees and costs. Defendant is also liable to Plaintiffs for the minimum interest and default interest which continues to accrue, and attorneys' fees and costs, incurred and to be incurred by Plaintiffs in connection with action.

## COUNT II
**(Breach of Contract – Plaintiffs v. Defendant Borrower)**

62. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

63. On or about April 12, 2017, the Defendant Borrower executed the Loan Documents.

64. Defendant defaulted under the Loan Documents by failing to make the requisite payments.

65. As a result of the Borrower's Default, including but not limited to, failing to pay the outstanding principal and interest by the Maturity Date, the Plaintiffs have been damaged in excess of $11,793,877.48.

66. Defendant Borrower has defaulted under the Loan Documents by, amongst other things failing to make the requisite payments, in accordance with its obligations under the Loan Documents.

67. Defendant Borrower breached sections 2.2, 2.3, 2.4, 7.1, 8.1 of the Loan Agreement.

68. Plaintiffs have suffered damages as a result of the Defendant Borrower's breach of the Loan Documents.

69. Defendant Borrower is liable in excess of $11,793,877.48, exclusive of attorneys' fees and costs. Defendant Borrower is also liable to Plaintiffs for the minimum interest and default interest which continues to accrue, and attorneys' fees and costs, incurred and to be incurred by Plaintiffs in connection with action.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against the Defendants as follows:

A. Grant Judgment in favor of Plaintiffs and against Defendant Guarantor for compensatory damages for the Guaranteed Obligations in an amount in excess of $11,793,877.48, plus continuing pre-judgment interest thereon, and such further and other relief as the Court determines is just and appropriate.

B. Grant Judgment in favor of Plaintiffs and against Defendant Borrower for compensatory damages for the Loan Obligations in an amount in excess of

$11,793,877.48, plus continuing pre-judgment interest thereon, and such further and other relief as the Court determines is just and appropriate.

C. Award such other or further relief as the Court deems just and proper, including costs and disbursements of this action.

Respectfully submitted,

Dated: New York, New York
December 15, 2023

**WHITE AND WILLIAMS LLP**

BY: _____
Agatha Mingos, Esq.
7 Times Square, Suite 2900 |
New York, NY 100036
Phone: 212.631.4438
*Attorneys for Plaintiffs.*