UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STRATA TRUST COMPANY, CUSTODIAN FBO PETER FIORETTI ROTH IRA 300002568 (AS ASSIGNEE OF LIBERTY TRUST COMPANY, LTD, AS CUSTODIAN FOR THE BENEFIT OF PETER JOHN FIORETTI IRA ACCOUNT TC003645), and PETER FIORETTI,<br><br>Plaintiffs,<br><br>v.<br><br>LINDA E. GRECO, SDS BNDO STREET FUNDING LLC,<br>Defendant. | Case No: 1:23-cv-07910- MMG<br><br>**AFFIDAVIT OF PETER FIORETTI** |

STATE OF NORTH CAROLINA)
                                                    SS.
COUNTY OF MECKLENBURG)

Peter Fioretti, being duly sworn, certifies as follows:

1.   I am the Chief Executive Officer for Mountain Funding, LLC, the Loan Servicer Entity for Plaintiff Strata Trust Company, Custodian FBO Peter Fioretti Roth IRA 300002568 (as assignee of Liberty Trust Company, Ltd, as custodian for the benefit of Peter John Fioretti IRA Account TC003645) ("Strata" or "Plaintiff").

2.   I have personal knowledge of the facts set forth herein and submit this affidavit in support of the Motion for Summary Judgment submitted on behalf of Plaintiff Strata and myself, as named Plaintiff's (collectively with Strata, "Plaintiffs") against Defendant Linda E. Greco (collectively "Defendant").

3.   This action seeks a judgment of $12,759,546.83, which encompasses the outstanding principal and interest due to Plaintiffs by Defendant as of May 31, 2024, including 25% default interest rate per annum which continues to accrue, and will continue to accrue post-judgment, until the loan is paid in full pursuant to the Note, Loan Agreement, Side Letter,

Guaranty, Loan Participation Agreement, First Amended Loan Participation Agreement, Second Amended Loan Participation Agreement, First Modification Agreement, Second Modification Agreement, and Third Modification Agreement (collectively referred to as the "Loan Documents") described herein.

4. Pursuant to the aforementioned Loan Documents, Plaintiffs also seek the reimbursement of attorneys' fees and costs incurred by Plaintiffs related to this action, and for such other and further relief as the Court may deem just, proper, and equitable.

**The Parties**

5. Strata is a trust company organized under the laws of the State of Texas.

6. I am an individual doing business at Mountain Funding LLC, located at 6836 Carnegie Boulevard, Charlotte, North Carolina 28211, which is the owner of the Peter Fioretti Roth IRA 300002568 managed by Strata.

7. Upon information and belief, Defendant Linda Greco ("Guarantor") is an individual residing at 132 Remsen Street, Brooklyn, New York, 11201.

8. Upon information and belief, Defendant SDS BNDO Street Funding LLC ("Borrower") is a limited liability company doing business at 132 Remsen Street, Brooklyn, New York, 11201.

**Factual Background**

9. On or about April 11, 2017, Borrower executed and delivered to Liberty Trust Company, LTD as custodian for the benefit of Peter John Fioretti IRA Account TC003645 ("Liberty Trust"), subsequently assigned to Strata Trust Company, Custodian for the benefit of Peter John Fioretti Roth IRA Account 300002568, and Peter Fioretti, (collectively "Lender"), a Promissory Note (the "Note") wherein Borrower promised to pay to Lender two million two

hundred thousand dollars ($2,200,000.00), together with interest in accordance with the Loan Agreement (the "Loan Agreement") executed on April 11, 2017. True and correct copies of the Note and the Loan Agreement are annexed here to as **Exhibit A** and **Exhibit B**, respectively.

    10.    Section 2.2 of the Loan Agreement mandates the following:

(a) the maturity Date shall be December 31, 2017, the interest rate shall be twenty (20%) percent per annum, accruing and payable as hereinafter provided.

(b) lender shall be repaid from the receiving 100% distribution of New Sale Proceeds received by the Borrower, prior to all other distributions.

(c) Lender must receive not less than the repayment of its Loan plus the Minimum Interest.

    11.    Section 2.3 of the Loan Agreement specifically states:

(a) At maturity. The entire outstanding principal amount of the Loan together with all accrued and unpaid interest on the Loan and all other amounts due under the Loan Documents with respect to the Loan shall be due and payable by Borrower to Lender on the Maturity Date.

(b) Prior to Maturity. Prior to the Maturity Date, all cash flow proceeds received by the Borrower or PG, directly or indirectly, from SDS William, LLC, SDS 46, LLC, or SDSP Schermerhorn, LLC shall be distributed as set forth in §2.2. Amounts repaid by the Borrower pursuant to this section may not be reborrowed.

    12.    Section 2.4 of the Loan Agreement provides that the Loan shall "bear interest at a rate of 20% per annum." Additionally, in the event of default,

[T]he Loan shall bear interest at the Default Rate, Payment or acceptance of the increased rates provided for in this Section 2.4(b) is not a permitted alternative to timely payment or full performance by the Borrower and shall not constitute a waiver of any default or Event of Default or a waiver in respect of this Agreement or any other Loan Document and shall not otherwise prejudice or limit any rights or remedies of the Lender.

    13.    Section 8.1 of the Loan Agreement provides:

Borrower agrees that its obligations under this Agreement and the other Loan Documents are absolute and unconditional, irrespective of the value, genuineness, validity, regularity or enforceability of any of the Loan Documents, or any other agreement or instrument referred to therein, or any substitution, release or exchange of any other guaranty of or security for the Loan Obligations, and, to the fullest extent permitted by applicable law,

irrespective of any other circumstance whatsoever which might otherwise constitute a legal or equitable discharge or defense, it being the intent of Section 8.1 that the obligations of Borrower hereunder shall be absolute and unconditional under all circumstances.

14. The Borrower has defaulted and remains in default under the Loan Documents, and specifically section 7.1 of the Loan Agreement which outlines the Events of Default.

15. The Borrower has failed and/or refused to pay the Loan Obligations in breach of the Loan Agreement, including but not limited to sections 2.2, 2.3, 2.4, 7.1, 8.1 of the Loan Agreement.

16. The Loan is further secured by that certain Side Letter Agreement dated April 12, 2017 ("Side Letter") by and between Louis V. Greco, Jr. ("Greco") and Lender, further acknowledged by Borrower and its manager, BNDO Manager LLC ("BNDO Manager"). A true and correct copy of the Side Letter is attached hereto as **Exhibits C**.

17. Greco is the Controlling Person, as that term is defined in the Loan Documents, of the Defendant Borrower. Greco was the authorized signatory of the Defendant Borrower.

18. The Loan is further secured by the Loan Participation Agreement ("Loan Participation Agreement") dated October 11, 2017 by and between Lender and G46, LLC ("Participant"), as further amended by the First Amendment to Loan Participation Agreement ("First Amended Loan Participation Agreement") dated December [ ] 2017, and further amended by the Second Amendment to Loan Participation Agreement ("Second Amended Loan Participation Agreement") dated March 20, 2018. A true and correct copy of the Loan Participation Agreement, First Amended Loan Participation Agreement, and Second Amended Loan Participation Agreement are attached hereto as **Exhibits D, E, F**, respectively.

19. The Loan is further secured by that certain Guaranty ("Guaranty") dated April 12, 2017, given by Guarantor for the benefit of Lender. A true and correct copy of the Guaranty is attached hereto as **Exhibit G**.

20. Section 1 of the Guaranty provides that the "obligations of Guarantor hereunder are and shall be absolute under any and all circumstances…" (See Ex. G, ¶1).

21. The Guaranty provides for the following guaranteed obligations ("Guaranteed Obligations"):

> (a) The amount of the Debt, including reasonable attorneys' fees incurred by the Payee to enforce the Note, that remains due but unpaid.
>
> (b) The amount of any and all liabilities, losses, damages, expenses, and charges arising out of or any way connected with litigation (threatened or actual) in connection with the (i) Loan, or (ii) that certain real property located at 22 Bond Street, New York New York, for which Payee or any affiliate of Payee may become liable or sustain.
>
> (c) The conditions set forth in that certain Side Letter dated as of the date hereof, between Payee, Maker, and BNDO Manager LLC.

(*See* Ex. G, ¶3).

22. Section 4 of the Guaranty provides that Guarantor shall be liable "for all reasonable out-of-pocket costs and expenses (including reasonable counsel fees)…in connection with the collection of the Guaranteed Obligations or any portion thereof or with the enforcement of this Guaranty." (*See* Ex. G, ¶4).

23. Section 5 of the Guaranty specifically states:

> This is a guaranty of payment and not of collection and, upon and during the continuance of any Event of Default of Maker under the Note or the other Loan Documents, Payee may, at its option, proceed directly and at once, without notice, against Guarantor to collect and recover the ***full amount of the Guaranteed Obligations*** or any portion thereof, without proceeding against Maker or any other person, or foreclosing upon, selling, or otherwise disposing of or collecting or applying against any of the mortgaged property or other collateral for the Loan.

(*See* Ex. G, ¶5)(emphasis added).

24. On or about October 11, 2017, the Borrower, Guarantor, BNDO Manager, and Lender entered into that certain Amended and Restated First Omnibus Loan Modification Agreement ("First Modification Agreement"), increasing the Loan Amount from $2,200,000.00 to $5,050,000.00. A true and correct copy of the First Modification Agreement is attached hereto as **Exhibit H**.

25. BNDO Manager and Lender previously entered into that certain loan in the amount of $1,400,000.00 as evidenced by that certain promissory note dated January 1, 2014 (the "$1.4M Loan"), and that certain loan in the amount of $1,000,000.00 as evidenced by that certain promissory note dated August 12, 2014 (the "1.0M Loan"). The $1.0M Loan and the $1.4M Loan are hereinafter collectively referred to as the BNDO Loans.

26. On or about October 11, 2017, Borrower further made a loan to 22 BNDO MEZZ LLC, a Delaware limited company ("Joint Venture") in the amount of $5,050,000.00 ("Partnership Loan"). The Joint Venture is the sole member of 22 BNDO, LLC, a Delaware limited liability company ("Owner") which is the fee owner in that certain six-unit condominium project located on 22 Bond Street (the "Project").

27. On or about December [ ], 2017, the Borrower, Guarantor, BNDO Manager, and Lender entered into that certain Second Omnibus Loan Modification Agreement ("Second Modification Agreement"), increasing the Loan Amount from $5,050,000.00 to $5,250,000.00. A true and correct copy of the Second Modification Agreement is attached hereto as **Exhibit I**.

28. On or about March 20, 2018, the Borrower, Guarantor, BNDO Manager, and Lender entered into that certain Third Omnibus Loan Modification Agreement ("Third Modification Agreement"), increasing the Loan Amount from $5,250,000.00 to $6,450,000.00. A true and correct copy of the Third Modification Agreement is attached hereto as **Exhibit J**.

29. The First Modification Agreement, Second Modification Agreement, and Third Modification Agreement each reaffirmed the Guaranty and included in relevant part the following:

> **Reaffirmation of Guaranty**. Guarantor, by her signature below as such, for a valuable consideration, the receipt and adequacy of which are hereby acknowledged, hereby consent to this Agreement and hereby declares to and agrees with Lender that the Guaranty is and shall continue in full force and effect for the benefit of Lender with respect to the Obligations, as amended by this Agreement, that there are no offsets, claims, counterclaims, cross-claims or defenses of the Guarantor with respect to the Guaranty nor, to Guarantor's knowledge, with respect to Obligations, for which Guarantor is liable pursuant to the Guaranty, that the Guaranty is not released, diminished or impaired in any way by this Agreement or the transactions contemplated hereby, and that the Guaranty is hereby ratified and confirmed in all respects. Guarantor hereby reaffirms all of the representations and warranties set forth in the Guaranty. Guarantor acknowledges that without this consent and reaffirmation, Lender would not execute this Agreement or otherwise consent to its terms.

(*See* Ex. H, ¶10; Ex. I, ¶7; Ex. J, ¶7).

30. As set forth in the Loan Agreement, all sums due and owed under the Loan were required to be repaid, in full, by December 31, 2017 (the "Maturity Date"), as further extended to June 30, 2018, pursuant to the Third Modification Agreement,

31. Borrower defaulted and has remained in default, as a result of its failure to pay the outstanding principal and interest as required on the applicable Maturity Date ("Borrower's Default").

32. Defendant Guarantor has breached the Guaranty by failing to satisfy the Guaranteed Obligations and numerous provisions of the Guaranty.

33. On or about July 6, 2023, a Notice of Default ("Notice of Default") was issued to the Borrower and the Guarantor. A true and correct copy of the Notice of Default is attached hereto as **Exhibit K**.

34. Demand was made on the Guarantor for prompt payment of the Guaranteed Obligations with regard to the Borrower's Default. Guarantor has refused to make prompt payment in accordance with the Guaranty and remains in breach of the Guaranty.

35. Defendants pledged as collateral, as per the Loan Documents, that certain property located at 140 Remsen Street, Unit 3, Brooklyn, New York (Block 254, Lot 1103) ("Pledged Collateral"). A true and correct copy of the UCC-1 documenting the Plaintiffs' security interest is attached hereto as **Exhibit L**.

36. On or about August 8, 2022, Defendants misrepresented by written email communications to Plaintiffs, that the sale of the Pledged Collateral would result in a paydown to Plaintiffs of approximately $135,00 to $200,000. A true and correct copy of the emails are attached hereto as **Exhibit M**.

37. On or about September 22, 2022, Defendants sold the Pledged Collateral and converted the proceeds. A true and correct copy of the Statement of Closing is attached hereto as **Exhibit N**.

38. On or about October 3, 2022, the following was misrepresented with respect to the sale of the Pledged Collateral:

> The transaction closed last week and the final net to the seller is $51,000 (Closing statement attached). It required a modification to the declaration (insisted by the other unit owners and it cost us about $15,000. The money is being held by sellers attorney until the recording of the deed which will happen when the amended declaration of and tax maps are filed. Plans were filed with the city surveyor and the attorney is holding an addition[al] $25K of the seller money to insure that its filed by the 31st of October otherwise it come[s] to us.

39. The net seller proceeds of at least $51,123.39 ("Net Seller Proceeds") should have been provided to the Plaintiffs as per the Loan Documents.

40. On or about October 17, 2022, it was misrepresented to the Plaintiffs that:

> Comments by the City Survey on the plans were received Friday. Plan approval for the modification to the declaration is expected later this week early next week which will allow us to record the declaration and the final deed thus releasing the money from escrow.

41. The Plaintiffs never received the funds despite numerous follow up communications and despite several misrepresentations from the Borrower and Guarantor that the funds would be forthcoming.

42. Borrower and Guarantor misrepresented that they would be providing the Net Seller Proceeds to the Plaintiffs post-closing.

43. Borrower and Guarantor misrepresented to Plaintiffs that the Net Seller Proceeds were being held in escrow and would be released to Plaintiffs.

44. Borrower and Guarantor instead converted the funds post-closing and continued to make fraudulent misrepresentations to Plaintiffs to disguise the theft.

45. Borrower and Guarantor, with intent to deceive, made the multiple misrepresentations and disguised their conversion of the Net Seller Proceeds of the Pledged Collateral.

46. On or about November 14, 2022, the Plaintiffs followed up again with the Borrower and Guarantor for the Net Seller Proceeds.

47. On or about July 10, 2023, the Plaintiffs followed up once again with the Borrower and Guarantor for the Net Seller Proceeds.

48. Plaintiffs never received the Net Seller Proceeds as Borrower and Guarantor fraudulently converted the funds.

49. The Defendants have failed to cure the default and the Loan remains in default.

50. In accordance with the Loan Documents, Defendants are liable to Plaintiff in excess of $12,759,546.83, as of May 31, 2024. The per diem interest amount on the Loan pursuant to the Loan Documents is $2,702.78 for interest, and $675.69 for default interest, for a total amount of

$3,378.47 in per diem interest that continues to accrue each day. A true and correct copy of the itemized accounting is attached hereto as **Exhibit O**.

51. I affirm under penalty of perjury under the laws of New York that the foregoing facts are true and correct, except as to those facts stated upon information and belief for which I have a good faith basis to believe they are true.

52. For the reasons set forth above and in the annexed exhibits, Plaintiffs respectfully request that summary judgment be granted awarding Plaintiffs the outstanding amount of $12,759,546.83, as of May 31, 2024, with interest continuing to accrue at an interest rate of 25% per annum, and per diem interest of 3,378.47 accruing each day, as well as attorneys' fees and costs, and all costs and expenses incurred by Plaintiffs in connection with bringing this action, and for such other relief as this Court may deem just and proper.

[SIGNATURE PAGE FOLLOWS]

_____
Peter Fioretti

Sworn to before me this
28 day of May, 2024

_____
Notary Public

Rachel M Berg
Notary Public
Mecklenburg County
North Carolina
My Commission Expires 02/17/2026